

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

| | | |
|---|---|---|
| *Rod J. Rosenstein*<br>*United States Attorney*<br><br>*Bonnie S. Greenberg*<br>*Assistant United States Attorney* | *36 South Charles Street*<br>*Fourth Floor*<br>*Baltimore, Maryland 21201* | *DIRECT: 410-209-4890*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0716*<br>*TTY/TDD: 410-962-4462*<br>*Bonnie.Greenberg@usdoj.gov* |

October 27, 2010

Isaac Klein, Esquire
One North Charles Street
Suite 350
Baltimore, Maryland 21201

    Re:   United States v. Jamie Paul Lybrand
            Criminal No. WDQ 10-0421

Dear Mr. Klein:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by November 5, 2010, it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

    1.    The Defendant agrees to plead guilty pursuant to Fed. R. Crim. P.11(c)(1)(C) to Count One of the Indictment now pending against him charging him with use of an interstate commerce facility to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which the Government would prove if the case went to trial, are as follows:

First, that on or about February 19, 2010, the Defendant used a facility and means of interstate and foreign commerce;

Second, that the Defendant used the interstate facility to knowingly persuade, induce, entice, or coerce, or attempted to do so, any individual who has not attained the age of 18 years to engage in any sexual activity for which any person can be charged with a criminal offense.

## Penalties

3. a. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: imprisonment for not less than ten (10) years and not more than life, followed by a term of supervised release of not more than life and a fine of $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

b. The defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

<u>Waiver of Rights</u>

4.	The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.	If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.	If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.	If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.	The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.	If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.	By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.	If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

A. **COUNT ONE** - 18 U.S.C. § 2422(b)(use of interstate facilities to entice minor)

1. The base offense level is twenty-eight (28) pursuant to U.S.S.G § 2G1.3(a)(3).

2. Pursuant to U.S.S.G. § 2G1.3(b)(3), there is a two (2) level increase because the offense involved the use of a computer to entice the minor.

(SUBTOTAL = 30)

B. **COUNT TWO** - 18 U.S.C. § 2252(a)(2)(distribution of child pornography)

1. The base offense level is twenty-two (22) pursuant to U.S.S.G. § 2G2.2(a)(2).

4

2. Pursuant to U.S.S.G. § 2G2.2(b)(2), there is a two (2) level increase because the depictions involved prepubescent minors or minors under the age of twelve (12).

3. Pursuant to U.S.S.G. § 2G2.2(b)(3)(F), there is a two (2) level increase because the offense involved distribution.

4. Pursuant to U.S.S.G. §2G2.2(b)(6), there is a two (2) level increase because the distribution involved the use of a computer.

5. Pursuant to U.S.S.G. §2G2.2(b)(7)(D), there is a four (4) level increase because the offense involved at least 300, but not more than 600, images.

(SUBTOTAL = 32)

C. Pursuant to U.S.S.G. §§ 1B1.2 and 3D1.4, the above-referenced groups do not group and therefore the highest offense level is increased by two (2) offense levels.

(SUBTOTAL= 34).

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for his conduct. This Office may oppose *any* adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

Thus, the final anticipated base offense level is **31.**

7. This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4 or 5 of the United States Sentencing Guidelines will be raised or are in dispute.

8. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

5

## Obligations of the United States Attorney's Office

9. The parties stipulate and agree that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), a sentence of ten years (120 months) imprisonment in the custody of the Bureau of Prisons, and lifetime supervised release, is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful fine. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea agreement pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A).

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct. The government agrees to dismiss the remaining counts of the Indictment.

## Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C.§ 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds 120 months' imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below 120 months' imprisonment.

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

6

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

    12. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

    13. The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C). The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Forfeiture

    14. The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities on March 16, 2010 and the property listed in the forfeiture count of the indictment. He further agrees to take whatever steps are necessary to pass clear title to those properties to the United States.

### Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Bonnie S. Greenberg
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11/8/10
Date

Jamie Paul Lybrand

I am Mr. Lybrand's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

11/8/10
Date

Isaac Klein, Esquire

8

## EXHIBIT A
## STIPULATED FACTS

The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

Jamie Paul Lybrand, age 25, is a resident of Baltimore, Maryland.

On February 25, 2010, while working in an undercover capacity, Detective Smith responded to a February 19, 2010, online Craig's List ad titled "Seeking Daddy/Son Combo - 24 (Baltimore, MD)." The body of the ad included the following "Any dad's out there that have a 'special' penetrating relationship with your son OR daughter and would like to share. Please hit me up." The online ad was accompanied with a picture of a white male exposing his erect penis. Detective Smith responded via email "I saw your ad i have a 12 year old wit autism. We are really close and like to play what u into".

On February 25, 2010, at 4:40 PM, Jamie Paul Lybrand, using the email address barebackbuddha@yahoo.com, responded to Detective Smith's email. The name "J P" appeared in the header of the email. The email stated "Great! I'm looking for a real dad who penetrates his son and allows me to do the same... Can I come play with you two? Where are you? Can you send pics?ds".

On February 25, 2010, at 5:50 PM, Jamie Paul Lybrand, using the email address barebackbuddha@yahoo.com, responded again to Detective Smith's email. The name "J P" appeared in the header of the email. The email stated "Contact me dude! I want to visit and video tape fucking and seeding that little retarded boy good! Do you live alone with him? I'd seed my little boy every day! I'd give anything for you to let me forcefully rape your 12 year? old? know where we could get a younger one to join us? Send me pics of vids of your cock in your sons ass, please! I'd even send money via paypal...".

On March 4, 2010, while working in an undercover capacity, Detective Smith responded to a February 25, 2010, unrelated online Craig's List ad titled "Seeking Real Daddy Son Combo - 24 (Highlandtown)." The body of the ad included "Looking to live with an experienced dad who has very 'special' penetrating relationships with a biological son or sons and will allow me to join the incestuous situation." The classified ad was accompanied with four pictures. One picture was of a clothed white male's face and torso. Another picture was of what appears to be a white male's anus. Two pictures were of a white male's erect penis. Detective Smith responded via email "39 wm with a 12 year old step son who i am very close to...let me no".

On March 4, 2010, Jamie Paul Lybrand, utilizing the email address barebackbuddha@yahoo.com, responded to Detective Smith's email. The name "J P" appeared in the header of the email. The individual stated "Call me asap!!!! I would do anything to rape your 12 year old violently and get it on tape. 4102099810." The email was signed "410-209-9810 Jamie".

On March 15, 2010, at approximately 10:00 PM, Jamie Paul Lybrand called Detective Smith and requested that they meet. Jamie Paul Lybrand identified himself on the telephone as the individual using the email address barebackbuddha@yahoo.com. Detective Smith informed the individual that he could not meet at that time and they then began communicating through Yahoo! Instant Messenger. They discussed meeting at a hotel on March 16, 2010.

Thereafter, Jamie Paul Lybrand sent Detective Smith two video files and one image file. These 2 video files and 1 image file contained visual depictions of actual minors engaging in sexually explicit conduct and is child pornography under 18 U.S.C. § 2256(8). In the first video file, the title of which is "(Babyshivid)(RCA)BabyJ-002.avi", a prepubescent female is being vaginally penetrated by an adult male. The second video file, the title of which is "BBRAPE.mpg", is a compilation of various sexual conduct between an adult male(s) and prepubescent female(s). In the image file, the title of which is "cummyass.jpg", a minor male's penis and anus is exposed and covered with what appears to be semen.

On March 16, 2010, Jamie Paul Lybrand contacted Detective Smith via Yahoo! Instant Messenger. They discussed meeting at the Red Roof Inn located at 111 W. Timonium Road, Timonium, Maryland 21093. At approximately 3:39 p.m. Jamie Paul Lybrand arrived at the Red Roof Inn driving a Toyota, bearing Maryland registration plates 6EWF55. He walked to the agreed upon room number, knocked on the door, and Detective Smith invited him into the room. Still working in an undercover capacity, Detective Smith informed Jamie Paul Lybrand that the 12 year old child was in the bathroom of the hotel room. Jamie Paul Lybrand removed his clothing, exposing his penis, and laid in the bed in the hotel room. At approximately 3:44 p.m., members of the Baltimore County Police Department entered the room and placed Jamie Paul Lybrand under arrest.

Lybrand was advised of his *Miranda* rights. He stated that he understood his rights and agreed to be interviewed. Jamie Paul Lybrand stated that he resided at 3714 East Lombard Street, Baltimore, MD 21224. He explained that he is sick, and that he is sexually interested in children around puberty age. Lybrand explained that he was molested as a child and has fantasied about having sex with younger people. Jamie Paul Lybrand admitted that he got the child pornography videos from someone on the Internet and that he uses the screen name barebackbuddha@yahoo.com. He further admitted that he communicated with someone online that was going to bring their 12 year old child to have sex with him. He said he was happy it was a sting and not real because he was afraid of what he might have done. Lybrand stated that he has an addiction to crack cocaine and that he recently checked himself into a hospital.

Forensic review of the computer revealed five videos and one image of child pornography.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

*Jamie Lybrand*
Jamie Paul Lybrand